Alan Goldberg (136988)
The Law Office of Alan Goldberg
5660 Etiwanda Ave. Suite 3
Tarzana, CA 91356
Office: (818) 921-2226
Fax: (818) 936-0345
alangoldberglaw@gmail.com

Eric J. Menhart (*Admitted Pro Hac Vice*)
Lexero Law
316 F Street NE, Suite 101
Washington, DC 20002
Office: (855) 453-9376
Fax: (855) 453-9376
Eric.Menhart@Lexero.com

Attorneys for Plaintiff Aardwolf Industries LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| AARDWOLF INDUSTRIES LLC<br><br>Plaintiff,<br><br>v.<br><br>ABACO MACHINES USA, INC. et al.<br><br>Defendants. | Case No. 2:16-cv-01968-GW-JEM<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER AND AMEND COMPLAINT**<br><br>**Date: Thurs. Sept. 7, 2017**<br>**Time: 8:30 a.m.**<br>**Place: Courtroom 9D (First Street)** |

# INTRODUCTION & BACKGROUND

On June 29, 2017, Plaintiff AARDWOLF INDUSTRIES LLC ("Aardwolf Industries" or "Plaintiff") filed a Motion for Leave to Amend, seeking to file a Fifth Amended Complaint ("FAC"). Plaintiff refiled the Motion to Amend, along with a Motion for Modification of the Scheduling Order, on August 10, 2017. Defendants' filed memorandum in opposition thereto on August 17, 2017, and this memorandum in reply follows.

# ARGUMENT

**A. Various Issues of Law and Fact**

*1. Plaintiff has been engaged in discovery throughout the case.*

First, Defendants contend that Plaintiff's participation in factual discovery was lacking. However, the claim that Plaintiff "undertook zero discovery from October, 2016, until May, 2017, a period of over seven (7) months," Dkt. # 162 at 2:16-17 (citing Dkt. # 131), is completely inaccurate. Plaintiff initiated a thorough review of Defendant Abaco's discovery responses in November 2016, and when Defendants finally issued their own discovery requests to Plaintiff in March 2017, Plaintiff diligently collected all relevant materials in its possession, providing responses the following month. Moreover, as set forth below, Plaintiff had been engaging in substantial investigation on its own.

*2. Plaintiff did not identify the YouTube video until June 12, 2017*

Next, Defendants note that "Plaintiff's responses sent [March 24, 2017] did not identify the Aardwolf YouTube video posted on November 24, 2015." Dkt. # 162 at 3:5-6 (citing Lauson Decl. ¶ 2, Ex. A1, A2). This is correct, as Plaintiff had *not yet discovered the video*. That would occur a full two and one-half months later,

1  on June 12, 2017. Defendants are firm in their position that they "were unaware of
2  [the Aardwolf YouTube video] until Mr. Nguyen's deposition on June 22, 2017, and
3  they had it taken down within two days." *Id.* (citing Lauson Decl. ¶ 3, Ex. B). Of
4  particular note, recognizing that the video was relevant for purposes of the litigation,
5  and would necessarily need to be presented at Nguyen's deposition, a screencast
6  recording was created the exact same day the YouTube video was recovered for
7  purposes of documenting the infringement. That screencast is publicly available, for
8  the Court or anyone else, at the URL: http://bit.ly/2rX5kee

9  *3. Defendants had complete control over the newly discovered evidence*

10  The relevance of Defendants' conduct following the deposition is
11  questionable, at best, but their earnest avowal of a lack of knowledge of the video is
12  incongruous with the facts. Nguyen acknowledged, during his deposition, that he
13  was aware of the content of the video and that the video was publicly available on
14  on YouTube. *See* Dkt. #156-5 323:20-24. ("Q Was that a product that was being
15  displayed in the video? A Yes. Q That's an Abaco glass lifter? A Correct."). Nguyen
16  exhibited control of the YouTube video and the account that had posted it by taking
17  it down mere days later. Certainly, *at some point*, Defendnats or someone acting on
18  their behalf and under their control posted the video. That they forgot about its
19  existence is inconsequential to Plaintiff's causes of action and the Motion for
20  Modification of the Scheduling Order and Amendment of the Complaint.

21  *4. Defendants had evidence of the Facebook page; related control*

22  Defendants next inform this Court about an infringing Facebook page:
23  "Plaintiff's motion also mentions a Facebook page first presented to Defendants at
24  Mr. Nguyen's deposition. Plaintiff's discovery responses about the alleged

infringement never identified or disclosed the Facebook page as well." Dkt. # 162 at 3:13-16 (citing Lauson Decl. ¶ 2, Ex. A1, A2). The Lauson Declaration directs this Court to pay particular attention to Plaintiff's Responses to Defendants' Interrogatory Number One and Requests for Production Thirty-Four and Thirty-Five. *See* Dkt. # 162-1 ¶ 2.[1]

Defendants' statement as to these discovery issues is simply false. On the missing page four of the interrogatory responses, this Court would see listed among the documents Plaintiff identified as relevant to Defendants' Interrogatory Number One Aardwolf Document Numbers 64 and 85. *See* Declaration of Eric Menhart at ¶ 1. Documents 64 through 84 are screenshots of the infringing Facebook page from July 18, 2016. *Id.* at 5. These documents also appear in the responsive document lists for Interrogatories Two, Three, Eleven, and Twelve. *Id.* at ¶ 6. They also appear in response to Requests for Production Two, Three, Four, Fifteen, Sixteen, Thirty-Four, Thirty-Five, and Forty. *Id.* at 7. These documents were turned over to Defendants in Plaintiff's Production Number One on April 27, 2017. *Id.* at 3.

Plaintiff is uncertain as to how Defendants remained unaware of the Facebook page for two months, but, even allowing for the explanation that they simply did not review Plaintiff's production, their contention suffers from the same infirmity as that claiming a lack of knowledge of the YouTube video. *At some point*, they or someone acting on their behalf or under their control created the Facebook page. That its existence was forgotten is immaterial.

---

[1] Unfortunately, there seems to have been some sort of error with Defendants' filing of the Interrogatories and Requests for Production that resulted in only every other page being displayed, omitting the even pages. *See generally* Dkt. # 162-2, Dkt. # 162-3. As such, a full page of Plaintiff's Response to Defendants' Interrogatory Number One is missing, and Plaintiff's Response to Defendants' Request for Production Number Thirty-Five is missing in its entirety. *Id.*

1   While Defendants speculate that the Facebook page is now under the control
2   of Plaintiff, *see* Dkt. # 162 at 3:24-4:6, that is a plainly unsubstantiated allegation.
3   Plaintiff did not create the page, Plaintiff has no ability to call the shots as to the
4   Facebook page, did not change the Facebook page's password, and is absolutely
5   unaware of what the password could be. Declaration of Eric Menhart at ¶ 8-9.

6   *5. Defendants misrepresent Plaintiff's discovery requests*

7   Directing this Court's attention to Plaintiff's Interrogatory Number Twelve,
8   directed at Defendant Nguyen, Defendants assert that this is the first occasion on
9   which Plaintiff asked ". . . Defendants for information about alleged unauthorized
10  uses of the Aardwolf trademark or logo copyright . . .," Dkt. # 162 at 4:24-5:1, with
11  the date of said Interrogatory being May 20, 2017. Plaintiff's Interrogatory Twelve
12  requested that ". . .all mediums by which you . . . have offered 'Aardwolf' branded
13  products and/or made them available to consumers . . ." be identified. Similarly,
14  Interrogatory Number Thirteen asked that Defendants "[i]dentify all mediums by
15  which you . . . marketed, advertised, or promoted products bearing the 'Aardwolf'
16  Marks for sale . . ."

17  However, much like the above-mentioned Interrogatories, Plaintiff's First Set
18  of Interrogatories and Requests for Production to Defendant Abaco also made
19  mention of the 'Aardwolf' marks. Request for Production Number Twenty asks for
20  "[a]ll documents that record, refer to, or pertain to the design [and] manufacturing .
21  . . of goods bearing the 'Aardwolf' Mark. The infringing YouTube video would
22  clearly fall into this category. *See* Dkt. #133-4. Similarly, Plaintiff's Interrogatories
23  Numbers Eight and Nine to Defendant Abaco also requested information that should
24  have resulted in the divulgence of the YouTube video. *See* Dkt. #133-3. Defendant

Abaco's responses to Interrogatories Eight and Nine were in no way substantive, but only objections. *See* Dkt. #133-5. As to Request for Production Twenty, Defendant Abaco objected extensively and turned over one document, evidence of non-party Aardwolf LLC's only sale, which was completely non-responsive. *See* Dkt. #133-6.

As has been made abundantly clear, the YouTube video was responsive to Plaintiff's discovery requests from the start, and could have, and should have, been disclosed earlier in the litigation. Moreover, Defendant Nguyen's later responses to Interrogatories Twelve and Thirteen still did not list the infringing YouTube video, despite its being responsive, and despite Nguyen outright admitting that he controlled the video.

*6. Plaintiff was diligent both in discovering the new evidence and in seeking to amend upon discovering the new evidence*

Defendants next argue that Plaintiff has not been diligent in asserting the federal registration of its trademarks, *see* Dkt. # 162 at 6:4-7:9, but Plaintiff is not seeking an amendment of the Complaint in order to assert these registrations. Rather, Plaintiff is asserting new facts demonstrating *infringement* of these federally registered trademarks. Plaintiff did not become aware of the infringing YouTube video until June 12, 2017. But for plaintiff's own internal efforts, the evidence would not have been discovered.

Ten days later, through the deposition of Defendant Nguyen, Plaintiff confirmed the control and knowledge of the video, and one week later, filed a Motion to Amend with this Court. There simply was no delay on Plaintiff's part after discovery of the video and the deposition testimony thereto.

1 Defendants state that "Plaintiff's only excuse for its delay is that somehow Defendants are to blame for the registrations not issuing earlier. This is true, based on the Defendants' attorney's interference with the application before the United States Patent and Trademark Office. However, for purposes of the current issue, that fact is irrelevant. Based on the discovery of new evidence, and the deposition testimony thereof, Plaintiff became aware that it had a new claim for violation of its registered trademarks, and sought to asset that claim promptly. The date of registration is unimportant; the only operative fact being that they were indeed registered at the time Plaintiff discovered the infringing YouTube video in June of 2017.

Defendants point to the length of the passage of time between when the AARDWOLF marks were officially registered and the motion to add a claim for federally registered trademark infringement: "Plaintiff waited almost six months after the registration issued to move to amend the complaint and add the count for federal trademark infringement the first time . . . Plaintiff's attorney provides no valid excuse for the delay." Dkt. # 162 at 7:6-9 (citing Dkt. # 126, 160).

This conclusion, however, does not allow for the fact that in order for Plaintiff to assert a claim for infringement of a federally registered trademark, Plaintiff needed some sort of factual basis for such a cause of action. That factual basis came on June 12, 2017 – not in January 2017 – in the form of the infringing YouTube video. That June 12, 2017 is the operative date is *amply* supported by law. *See, e.g.*, *G.P.P., Inc. v. Guardian Prot. Prods.*, 2016 U.S. Dist. LEXIS 98276, *15 (E.D. Cal. July 27, 2016) ("In general, the focus of the diligence inquiry under Rule 16 is the time between the moving party's discovery of new facts and its asking leave of the

court to file an amended pleading." (citing *Zivkovic v. S. Cal. Edison Corp.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002))).

### B. Defendants' Own Amendments and Inconsistent Positions

*1. Defendants sought and were granted leave to amend seven months after their initial Answer*

On May 18, 2017, Defendants themselves filed a motion for leave to amend their answer. *See* Dkt. # 92-1. Defendants claimed that "From Plaintiff's interrogatory responses served April 27, 2017" that they became aware of the need for a new affirmative defense related to Nguyen's infringing trademark applications. To the contrary, the Fourth Amended Complaint plainly alleged that Nguyen's applications were alleged to be infringing. *See* Dkt. #63 at ¶ 63-64. Defendants' Answer had been filed October 19, 2016. Despite attempting to amend their pleadings *seven months later than their initial Answer*, the court eventually granted leave for Defendants to amend their pleadings, allowing an affirmative defense that has the potential to hurt Plaintiff's litigation position. *See* Dkt. #107.

*2. Defendants now take a position opposite to their own motion to amend*

Now, in their current Opposition to Plaintiffs attempts to amend, Defendants take issue with Plaintiff's efforts. Defendants assert that "[t]he deadline to amend had passed by the time of the scheduling conference, as was announced by the court at the hearing on March 16, 2017 when Judge Wu stated: 'There will be no further amendments. If anybody wants to amend, you have to go by way of a rule 16 motion.'" *Id.* at 8: 8-11 (citing Lauson Decl. ¶ 8, Ex. H).

In Defendants' own Motion to Amend, there is absolutely no mention of Fed. R. Civ. P. 16 or the good cause standard, but only the lenience called for by Fed. R.

1  Civ. P. 15(a)(2). *Id.* Despite the Court's words, Defendants were not made to show
2  good cause, but only that there was no evidence of undue prejudice, bad faith, or
3  dilatory motive. *Id.* at 2:22-3:2. In addition, Defendants took precisely the same
4  position regarding the deadline for amending the pleadings as Plaintiff now seeks to
5  assume: "Defendants understand that once the scheduling order sets a deadline for
6  amending pleadings, good cause may be required. Here the original scheduling order
7  issued March 16, 2017 is silent as to a deadline to amend the pleadings." Dkt. # 92-
8  1 at 3:3-5 (citing Dkt. # 87).

### C. There is No Prejudice to Defendants

The prejudice Defendants weakly claim would result to them if Plaintiff was allowed to amend and the scheduling order was modified is prejudice of their *own* making. If good faith searches or responses had been provided to Plaintiff's discovery requests at the outset, Defendants would have "remembered" their infringing YouTube video. The assertion of prejudice is just as easily asserted by Plaintiff; Plaintiff relied on Defendants' affirmation that their infringing conduct was a thing of the past. *See, e.g.*, Dkt. # 52 ("And even if Defendants were infringers in the past . . ."). Defendants clearly intended to place the onus upon Plaintiff to find infringing materials. Now that Plaintiff has done so, Defendants seek to arbitrarily suggest that prejudice exists, almost certainly part of their initial plan.

Moreover, the prejudice Defendants insist they will feel has as its only basis the fact that Defendants *might* become liable to Plaintiff for additional damages. Defendants state: "If the federal registrations were asserted potentially entitling Plaintiff to substantial statutory damages, Defendants would have put more resources into the defense." Dkt. # 162 at 8:23-25. With a two-month extension of

1  discovery, however, Defendants would be free to correct their misjudgment and
2  undertake the additional resources necessary.
3      The *G.P.P.* matter, despite Defendants' contention that it is factually
4  distinguishable, is again illustrative here. There, plaintiff GIS sought to amend the
5  pleadings a second time, adding in a claim of breach of agreement as to one of the
6  many agreements at issue in the litigation, naming the defendant's parent corporation
7  as a party under a theory of alter ego liability, and asserting a claim of tortious
8  interference with plaintiff's agreements on the part of the parent corporation. *See*
9  *generally G.P.P.*, 2016 U.S. Dist. LEXIS 98276. Because the particular agreement
10  the plaintiff alleged had been breached in the proposed second amended complaint
11  was already a part of the litigation, and despite the fact that the pleadings named an
12  entirely new party, the district court concluded that "GIS's proposed amendments
13  do not significantly change the course of the litigation, nor do they expand the
14  breadth of GIS's existing claims." *Id.* at *21 (*cf. Morongo Band of Mission Indians*
15  *v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("affirming denial of amendment to
16  add RICO claims because 'of the radical shift in direction posed by these claims,
17  their tenuous nature, and the inordinate delay'")). The district court continued: "To
18  the contrary, the amendments reflect issues already at the core of the case." *Id.*
19      This is precisely the case here. Trademark infringement has been the core
20  issue of this litigation from the start. The same two marks have been the subject of
21  this litigation throughout. Plaintiff's proposed amendment deals with nothing more
22  than those same two marks, and simply states an alternative theory of infringement
23  as to those two marks. Defendants attempt to differentiate this litigation from *G.P.P.*,
24  presenting the fact that "Plaintiff's [proposed] fifth amended complaint adds a new

cause of action for federal trademark infringement" as though that somehow proves a dissimilarity from *G.P.P.*, where the new claims "did not expand the breadth" of those existing. Dkt. # 162 at 10:3-4. Instead, the situation at hand is *exactly* like that in *G.P.P.*. The current operative pleadings state claims for trademark infringement. The proposed pleadings state a claim for infringement of a federally registered trademark, under a mere subsection of a statute already pleaded in the litigation. The scope of the litigation has not expanded.

Although Defendants cite the burden of additional costs as support for their argument in favor of finding prejudice, such general statements do not bolster the prejudice claim. The Court in *G.P.P.* wrote:

> The amendments, if allowed, would [] not require Guardian to engage in substantial additional discovery – such additional discovery is likely to be very limited. Guardian does not offer any specificity in terms of how much additional expense it would incur in defending GIS's new claims, and, as such, has failed to establish that an (unspecified) increase in litigation costs would be substantially prejudicial.

*See, e.g.*, *Sako v. Wells Fargo Bank, Nat. Ass'n*, 2015 U.S. Dist. LEXIS 111834, *4 (S.D. Cal. Aug. 24, 2015) (refusing to find undue prejudice on "summary arguments" where "neither party provide[d] any details as to what discovery on breach of contract and breach of the covenant of good faith and fair dealing was conducted or what additional discovery would be needed to address these proposed new claims."). Even if Guardian had provided such specificity, "[t]he fact that the amended counterclaim may cause more work does not constitute prejudice. . . . *Fru-*

1  *Con Const. Corp. v. Sacramento Mun. Util. Dist.*, 2006 U.S. Dist. LEXIS 94421, *5
2  (E.D. Cal. Dec. 15, 2006).

3  In the present case, Defendants' offerings to show prejudice do not even arise to those of the defendant in *G.P.P.* There is simply no argument that Defendants will be prejudiced by the addition of the infringement claim.

6  In further seeking to argue the applicability of *G.P.P.*, Defendants write that "GIS's motion [to amend] was made one month before the discovery cut-off [and] two months before the expert discovery cut-off . . ." Dkt. # 162 at 9:20-21 (citing *G.P.P.* at *20-21). The first problem with this statement is that it is not true. GIS's June 20, 2016 motion to amend was made more than one month after the *close* of factual discovery and only ten days before the close of the stipulated discovery extension made for the purpose of taking seven depositions *only*. *See G.P.P.* at *20 ("Per the scheduling order, most of the fact discovery in this matter closed on May 18, 2016, and the deadline was enlarged by stipulated order to June 30, 2016, to permit GIS to take Guardian employees' depositions. GIS's motion was filed one month after the fact discovery cut off, before the stipulated extended deadline of June 30, 2016, and before the expert discovery cut off of August 15, 2016." (internal citations omitted)).

19  Here, Plaintiff's first motion to amend in order to add the claim for infringement of a federally registered trademark came on June 29, 2017, almost one full month before the close of factual discovery on July 21, 2017, and one and one half months prior to the close of expert discovery on August 11, 2017. That motion then, is even more timely that the Plaintiff's in *G.P.P.* Even utilizing the date of the filing of the second motion to amend, August 10, 2017, Plaintiff filed to amend less

1 than a month after the close of factual discovery and prior to the close of expert
2 discovery. Moreover, this second motion sought virtually identical relief to the first
3 filed motion. By these facts, the case for allowing amendment is just as strong as –
4 if not stronger – the case for allowing the amendments in *G.P.P.*

5       Defendants' position as to the expert discovery will be addressed by Plaintiff
6 separately, in response to Defendants' related Motion in Limine. Moreover,
7 Defendants' contentions regarding the dilution claim are moot, given Plaintiff's
8 withdrawal thereof. Likewise, Defendants' argument that Plaintiff has been lacking
9 in diligence with regards to pre-trial deliverables is jumping the gun by quite a bit,
10 and clearly premature. Indeed, Plaintiff will be filing its own motions in limine at
11 the proper time the litigation.

12       In short, Defendants had complete control of the infringing YouTube video,
13 yet never disclosed it in discovery. Plaintiff, via its own internal investigations,
14 discovered the same, derived deposition testimony from Defendant Harry Nguyen
15 regarding the same, and immediately sought leave to amend. Defendants offer no
16 evidence of prejudice, of any kind. Moreover, the new evidence identified by
17 Plaintiff was fully under control of the Defendant at all times, and could have been
18 removed, at any time by *Defendants themselves*. Plaintiff sought leave to amend
19 promptly, and, while a subsequent motion was required, the first attempts were
20 clearly timely compared to the discovery of the new evidence.

21       Finally, as demonstrated above, Defendants have recently been granted leave
22 to amend their own pleadings, despite seeking to do so approximately seven months
23 after the initial opportunity to do so. The Rules also explain that a court "should
24 freely give leave when justice so requires." The newfound evidence, diligent

attempts to amend, and prior treatment of the opposing parties' amendments in this matter all lead to a finding that the proposed amendment is "just."

## CONCLUSION

For the reasons set forth in detail above, Plaintiff has shown that it is deserving of a short modification to the Scheduling Order and that its proposed pleadings should be accepted.

Respectfully submitted,

| /s/ Eric J. Menhart | /s/ Alan Goldberg |
|---|---|
| Eric J. Menhart, Esq. * | Alan Goldberg, Esq. |
| * *Admitted Pro Hac Vice* | *Attorney to be Noticed* |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed via ECF and all parties of record were automatically notified via that system.

/s/ Eric J. Menhart
Eric J. Menhart, Esq.